NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMEA CILLIKOVA, | Civil Action No. |
| Petitioner, | 15-2823 (MCA) (LDW) |
| v. | |
| PAUL CILLIK, | **OPINION** |
| Respondent. | |

Before the Court is the motion of Petitioner Timea Cillikova for fees and expenses incurred in connection with her Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (Concluded 25 October 1980) ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"). Petitioner seeks: (i) reimbursement from Respondent Paul Cillik, her ex-husband, of her transportation and translation costs in connection with hearings and appearances before the Court related to the Petition; and (ii) payment by Respondent of her *pro bono* counsel's fees and costs in this matter. (ECF No. 32). Having considered the parties' submissions, for the reasons set forth herein, and for good cause shown, the motion is **GRANTED** in part and **DENIED** without prejudice in part, pending submission of supplemental materials as set forth below.

**FACTUAL BACKGROUND**

The District Court held an evidentiary hearing on August 4, 2015 on the underlying Petition for the return of Petitioner's and Respondent's minor children to the Slovak Republic pursuant to the Hague Convention and ICARA, as well as on Respondent's motion to dismiss. United States

District Judge Madeline Cox Arleo issued an Opinion (ECF No. 25) and accompanying Order (ECF No. 26) on August 5, 2015, following the hearing, that granted the Petition and denied Respondent's motion to dismiss. The Court incorporates by reference the comprehensive factual findings set forth by Judge Arleo in her August 5, 2015 Opinion and only repeats the facts from that Opinion and the parties' briefing on the instant motion relevant to this application.

Petitioner and Respondent were married in the United States in 1990 and in the Slovak Republic in 2001. (ECF No. 26 at 2). During their marriage, they had two children together, referred to herein as P.C. and Pa.C. (*Id.*). Both children are minors.

Petitioner and Respondent were divorced in Slovakia in 2013. (*Id.* at 3). The Divorce Judgment provides that Respondent would have "personal custody" of the children and that Petitioner would have visitation rights on certain weekends and holidays. (*Id.*). Further, it specified that "[b]oth parents are entitled to represent the minor children and manage their property." (*Id.*).

Under this arrangement, while still residing in Slovakia, the children lived with Respondent and he bore primary financial responsibility for their care. (ECF No. 1, at 2). Petitioner apparently contributed monthly child support payments to Respondent in the amount of €53.[1] (ECF No. 35, at 7; ECF No. 37, at 6).

In October 2014, Respondent removed the children from the Slovak Republic and relocated them to New Jersey. (ECF No. 25 at 4). The Court found, based on Respondent's testimony at the evidentiary hearing and other evidence, that Respondent did not give any notice of his intent to remove the children to Petitioner, who resides in the Slovak Republic, or to the children's

---

[1] As of the time of this writing, this amount is equal to approximately US$57.41. It is unclear from the parties' submissions whether this amount is per child or in total. (*See* ECF No. 35 at 7; ECF No. 37 at 6).

2

school, and Petitioner did not learn of their removal until after they had arrived in the United States. (*Id.*).

In April 2015, Petitioner filed a Verified Petition under the Hague Convention and its implementing statute, ICARA, 42 U.S.C. § 11603 (now 22 U.S.C. § 9003), seeking, among other relief, an Order directing the return of P.C. and Pa.C. to the Slovak Republic. (ECF No. 1 at 8–9). The Verified Petition also sought an immediate Order barring the children's removal from this Court's jurisdiction and directing Respondent to surrender the children's travel documents. (*Id.* at 7–8). On May 12, 2015, Respondent made a motion to dismiss in lieu of answering, arguing the inapplicability of the Hague Convention, a lack of subject-matter jurisdiction, and that the Slovakian courts had awarded sole custody to him. (ECF No. 7). Petitioner filed papers opposing this motion (ECF No. 12).

Judge Arleo held an in-person show-cause hearing on June 2, 2015 with Petitioner, Respondent, and the children present. This hearing resulted in an Order prohibiting Respondent from removing the children from this jurisdiction, directing him to deliver the children's passports to the Clerk of the Court, and setting a schedule for the evidentiary hearing. (ECF No. 14). Petitioner and Respondent were also both present for the August 4, 2015 evidentiary hearing before Judge Arleo referenced above.

In granting the Petition and denying Respondent's motion to dismiss, the District Court ordered Respondent to return P.C. and Pa.C. to the Slovak Republic and to bear the cost of their travel. (ECF Nos. 25, 26). Respondent appealed and made an emergency motion to stay the Order pending the appeal. (ECF Nos. 27, 29). Judge Arleo denied the motion to stay (ECF No. 28), and Respondent apparently dismissed his appeal voluntarily (*see* ECF No. 38).

# I.

# DISCUSSION

### A. The Parties' Arguments

Petitioner now moves for an Order awarding her reimbursement of her travel and translation costs, as well as an award of fees and costs to her *pro bono* counsel at K&L Gates LLP, pursuant to the Hague Convention and ICARA. (ECF No. 32-1, at 1). She argues that ICARA presumes an award of "necessary expenses," including attorney's fees, to a prevailing petitioner. (*Id.* at 3). She asserts that Respondent does not lack financial resources, as he works as an electrician and owns property in the Slovak Republic. (*Id.* at 4). She further contends that "any impact the fee award would have on Respondent's ability to care for the children is offset by Petitioner's continued child support payments." (*Id.*). Petitioner seeks an award of $383.89 for costs of translating documents between English and Slovakian, $2765.07 for her travel and lodging costs of two trips from the Slovak Republic to New Jersey for court hearings, $145,221.50 in attorney's fees, and $13,734.25 in attorney's costs. (Decl. of Margaret Korgul, Esq., ECF No. 32-2, at 1–3).

Respondent, in opposition to the motion, urges that granting Petitioner the requested award of $162,204.71 would "financially ruin" him. He further argues that such an award would adversely impact the welfare of the children because he still bears primary financial responsibility for their care. (ECF No. 35 at 4, 7). He stresses that the property in the Slovak Republic referenced by Petitioner is, in fact, a marital asset and that equitable distribution by the Slovakian courts is pending. (*Id.* at 7). Respondent further contends that Petitioner fails to establish the reasonableness of her attorneys' rates or of their hours worked by failing to submit evidence of the prevailing hourly rate in New Jersey for counsel or detailed, itemized attorney invoices. (*Id.* at 9–10, 12–13). He urges the Court to reduce any fee award based on the equitable argument that he

4

had a good faith belief that he, as the parent with physical custody, had a right to remove the children to New Jersey. (*Id.* at 11–12).

In reply, Petitioner counters that Respondent has failed to submit any evidence of his financial circumstances. (ECF No. 37 at 4–5). As part of her reply papers, Petitioner submits partially redacted itemized billing records for her attorneys, and she contends that Respondent's many affirmative defenses and his motion to dismiss occasioned many additional hours of work by her counsel. (ECF No. 37 at 10–12; ECF No. 37-1).

### B. Fees Under The Hague Convention And ICARA

The parties essentially agree on the standard to be applied by the Court on this motion. (ECF No. 32-1 at 2–4; ECF No. 35 at 5–6). Article 26 of the Hague Convention specifically permits a court that orders the return of a child to impose the costs of the proceeding, including attorney's fees, on the person who removed the child. Convention on the Civil Aspects of International Child Abduction art. 26, Oct. 25, 1980, T.I.A.S. 11670. The fee provision in ICARA goes further, directing as follows:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title [formerly 42 U.S.C. § 11603] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3) (formerly 42 U.S.C. § 11607(b)(3)). An award of reasonable fees to a prevailing ICARA petitioner is thus presumed, unless the respondent can demonstrate that the demanded award would be clearly inappropriate. *See Clarke v. Clarke*, Civ. A. No. 08-cv-690, 2008 WL 5191682, at *1 (E.D. Pa. Dec. 11, 2008) (citing *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004)); *see also Carranco v. Muñoz*, Civ. A. No. 12-7299 (JLL), Order, ECF No. 18, at 2

5

(D.N.J. Feb 13, 2013) (also citing *Whallon*). The purpose of awarding a successful ICARA petitioner expenses is both to restore the petitioner to the financial position he or she would have been in absent the litigation and to deter the respondent from violating ICARA. *See Paulus ex rel. P.F.V. v. Cordero*, Civ. A. No. 3:12-CV-986, 2013 WL 432769, at *2 (M.D. Pa. Feb. 1, 2013).

### C. Analysis Of The Application For Fees And Costs

The award that Petitioner seeks may essentially be divided into two components: (1) Petitioner's out-of-pocket costs incurred in pursuing the Petition and opposing Respondent's dismissal motion, which comprise travel, lodging, and translation expenses; and (2) the amount that Petitioner's *pro bono* counsel now seeks to recover from Respondent, which encompasses attorney and paralegal fees for work performed and administrative costs, such as research and service of process. (*See* ECF No. 32-2 at 1–3).

#### 1. Petitioner's Out-Of-Pocket Expenses

The Court will first address Petitioner's out-of-pocket expenses, which she indicates as $383.89 for translations and $2765.07 in travel and lodging costs, totaling $3148.96. (*Id.* at 2–3). Petitioner submits invoices for these costs (ECF No. 32-2), and they appear necessary and reasonable. Furthermore, Respondent makes no argument against awarding such amounts, and it is clear that the law considers such costs recoverable. *See Paulus*, 2013 WL 432769 at *2–5; *Axford v. Axford*, Civ. A. No. 09-2914, 2009 WL 2256634, at *9 (E.D. Pa. July 28, 2009); *Distler v. Distler*, 26 F. Supp. 2d 723, 728–29 (D.N.J. 1998). Accordingly, the Court will order Respondent to pay Petitioner her requested out-of-pocket expenses in the amount of $3148.96.

#### 2. Petitioner's Attorney's Fees And Costs

Petitioner also seeks an award of $145,221.50 in attorney's fees and $13,734.25 in attorney's costs, totaling $158,955.75, to be paid to K&L Gates LLP. (ECF No. 32-2 at 1–2). In

support of this amount, Petitioner submitted documentation indicating 211.6 hours of work by lead counsel Margaret T. Korgul, Esq. at an hourly rate of $390, 196.2 hours by associate Meghan T. Meade, Esq. at an hourly rate of $295, 3.4 hours of work by counsel George P. Barbatsuly, Esq. at an hourly rate of $475, and 14.9 hours of work by paralegal Ken J. Doele at an hourly rate of $215. (ECF No. 32-2 at 2 & Ex. A). Petitioner also filed an itemized list of attorney costs, indicating that WestLaw searches accounted for $13,329.15 of the $13,734.25 total, with the remaining $405.10 going to service of process and travel expenses. (ECF No. 32-2, Ex. B). With her reply papers, Petitioner submitted a redacted itemized bill for the claimed attorney's fees and biographies of the three attorneys who worked on her case. (ECF No. 37-1, Exs. A & B). Respondent challenges the reasonableness of the hours and rates claimed by Petitioner's counsel, and he also contends that, given his financial situation, permitting such a large award would be clearly inappropriate. (ECF No. 35 at 6–12).

The Court will first examine whether Petitioner has established these claimed amounts of attorney's fees and costs as necessary and then whether Respondent has demonstrated them to be clearly inappropriate. *See* 22 U.S.C. § 9007(b)(3); *Hirts v. Hirts*, 152 F. App'x 137, 139 (3d Cir. 2005).

### (i) Necessity And Reasonableness Of The Attorney's Fees And Costs

Caselaw indicates that the preferred means of assessing the reasonableness of claimed attorney's fees is the lodestar method, pursuant to which the Court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Paulus*, 2013 WL 432769 at *6; *Axford*, 2009 WL 2256634 at *9; *Distler*, 26 F. Supp. 2d at 727. The successful petitioner bears the burden of establishing the necessity of the work performed and the reasonableness of the rates charged, and, once an initial showing is made, the Respondent may then raise specific objections. *Paulus*, 2013

7

WL 432769 at *6. Here, the redactions to the itemized invoices for the legal work allegedly performed by Petitioner's counsel impede a full assessment by the Court. Furthermore, Petitioner's submission of the itemized bill only with her reply papers deprived Respondent of the opportunity to challenge specific entries in his opposition to the motion.

Petitioner also fails to demonstrate, at this time, the reasonableness of the claimed hourly rates. A reasonable rate is typically determined by the market rate for attorneys of comparable skill and reputation within the pertinent community. *See Paulus*, 2013 WL 432769 at *7; *Axford*, 2009 WL 2256634 at *9; *Distler*, 26 F. Supp. 2d at 727. Petitioner's only evidence offered in support of her attorneys' claimed hourly rates were the biographies of Korgul, Meade, and Barbatsuly, which Petitioner, again, did not submit until her reply. (ECF No. 37-1, Ex. B). Even accepting Petitioner's argument that her counsel's "normal billing rate" should be used as a measure of the prevailing market rate (ECF No. 37 at 7–8), these biographies include no hints as to normal billing rates and make no mention of paralegal Doele.

As to the $13,734.25 in costs asserted by Petitioner's counsel, the vast majority of which comprise claimed WestLaw charges, Petitioner also failed to submit sufficient evidence of their necessity or reasonableness. There is no indication whether K&L Gates is actually billed per search by WestLaw, as opposed to enjoying a firmwide flat rate, and the claimed $13,329.15 in research expenses appears facially excessive, particularly for practitioners with experience in this discrete field of law.

Due to the deficiencies outlined above, Petitioner shall be given time to submit evidence going to the necessity and reasonableness of the hours worked by her counsel, including submission of an unredacted itemized billing record for *in camera* review, her counsel's claimed hourly rates, and the asserted research expenses. Respondent shall also be given an opportunity to

raise specific challenges to this evidence (other than the portions of the attorney invoices that the Court reviews *in camera*).

### *(ii) Whether Respondent Demonstrates That Petitioner's Claimed Attorney's Fees And Costs Are Clearly Inappropriate*

Assuming that Petitioner establishes necessary and reasonable attorney's fees and costs, the burden then shifts to Respondent to show that such an award would be clearly inappropriate. 22 U.S.C. § 9007(b)(3); *Hirts*, 152 F. App'x at 139; *Carranco*, Civ. A. No. 12-7299 (JLL), ECF No. 18 at 2. This provision has been described as a "broad caveat" and as permitting the Court to apply equitable principles in reducing an award of expenses. *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013); *Whallon*, 356 F.3d at 140. Petitioner posits that six factors may be considered in assessing whether an award would be clearly inappropriate: "(1) the impact on the abducting parent's ability to care for the child; (2) a party's lack of financial resources; (3) disparity between the parties' resources; (4) representation by multiple law firms; (5) unclean hands; or (6) failure to provide adequate financial support for the subject child." (ECF No. 32-1 at 3–4). Respondent seems to agree that these are the applicable factors. (*See* ECF No. 35 at 5–6). Although neither party explains from where these factors are derived, caselaw supports at least considering the financial situation of the respondent, particularly where a large award of expenses could potentially impair the respondent's ability to provide for the child. *See Hirts*, 152 F. App'x at 139, 140 (affirming reduction of award to prevailing ICARA petitioner based on a respondent's financial circumstances); *Whallon*, 356 F.3d at 140; *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995); *Carranco*, Civ. A. No. 12-7299 (JLL), ECF No. 18 at 2–3.

Respondent argues that Petitioner's demanded award would "financially ruin" him and thus impede his ability to continue as primary custodian of P.C. and Pa.C. Indeed, this amount

9

seems to be larger than ICARA fee awards demanded in other cases within this Circuit – and is greater than the amount of $128,983 sought in another District Court case, in which the Court characterized the fee request as "truly disturbing." *See Clarke*, 2008 WL 5191682 at *2.[2]

Nevertheless, while Respondent reports that he works as an electrician and supports a family, he has failed to introduce any evidence of his financial situation. While the Court is mindful of the potential harm that a large award may cause Respondent and, more particularly, his ability to see to the well-being of the children who are the subject of this action, Respondent has not submitted to the Court the information it would need in order to justify an equitable reduction. Despite Petitioner's argument that an award could be satisfied in part by Respondent's property in the Slovak Republic, it would seem inappropriate to rely on that asset while, as Respondent indicates, it is still awaiting equitable distribution between the parties. Accordingly, the Court will grant additional time for the Respondent to submit evidence regarding his financial circumstances and for either party to report any disposition as to former joint property or other assets.

---

[2] Moreover, in determining whether Respondent should be required to pay this large amount of fees and costs, the Court believes it is equitable for it to consider whether Petitioner would have permitted her counsel to expend such resources on this matter had she been required actually to pay for their services, as opposed to receiving the services *pro bono*.

10

## CONCLUSION

For the foregoing reasons, the portion of Petitioner's motion seeking to recover $3148.96 in travel, lodging, and translation expenses is **GRANTED**. The portion of Petitioner's motion seeking to recover $158,955.75 in attorney's fees and costs is **DENIED WITHOUT PREJUDICE**, subject to the receipt of additional submissions as set forth in the accompanying Order.

Dated: February 9, 2016

*/s/ Leda Dunn Wettre*
**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Original:    Clerk of the Court
   cc:    Hon. Madeline Cox Arleo, U.S.D.J.
          All Parties